## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

EVE ESCOBEDO,                          §
           *Plaintiff*          §
                  §          SA-24-CV-00773-XR
                  §
-vs-                                   §
                  §
SHERIFF MARK REYNOLDS, COMAL           §
COUNTY SHERIFF'S DEPARTMENT;           §
BAIL BOND BOARD JENNIFER               §
THARP, OFFICER FABIAN CHAPA,           §
PROBATION & PRE-TRIAL SERVICES;        §
BULVERDE SPRING BRANCH FIRE            §
DEPARTMENT, COMAL COUNTY;              §
AND  STATE OF TEXAS,                   §
           *Defendants*       §

## **ORDER**

On this date, the Court considered the status of this case.

On July 22, 2024, the Court issued an Order to Show Cause directing Plaintiff to file an amended complaint that adequately asserted a claim under a federal cause of action by no later than August 9, 2024. ECF No. 4. Plaintiff submitted an Amended Complaint on July 26, 2024. ECF No. 5. Without first seeking leave of Court, Plaintiff also filed a Second Amended Complaint on August 5, 2024, and a Third Amended Complaint on August 14, 2024. *See* ECF Nos. 6, 8.

Because Plaintiff filed her Second Amended Complaint (ECF No. 6) and Third Amended Complaint (ECF No. 8) without seeking leave from this Court, the Court struck those pleadings as improperly filed. ECF No. 9. The Court directed the Clerk's Office to refrain from issuing summons in this matter until the Court could review the Amended Complaint filed on July 26, 2024 (ECF No. 5), to determine whether this Court has subject matter jurisdiction and whether Plaintiff pled viable causes of action against the Defendants named in the Amended Complaint.

Thereafter, the Court granted Plaintiff leave to file a Second Amended Complaint ("SAC"), which she filed on March 14, 2025. *See* ECF No. 15.

Having reviewed the SAC, the Court hereby notifies Plaintiff of its intention to dismiss some or all of her claims, as explained more thoroughly herein. *See Davoodi v. Austin Indep. Sch. Dist.*, 755 F.3d 307, 310 (5th Cir. 2014) (noting that a district court may dismiss a claim on its own motion, as long as it provides notice of its intention and an opportunity to respond).

Plaintiff is **DIRECTED** to file a Third Amended Complaint, of no more than 20 pages, that cures the defects identified described in this order below by no later than **June 20, 2025**. **Failure to respond to this Order will result in dismissal of Plaintiff's claims without further notice.**

## BACKGROUND

Although it is disorganized and lacks significant factual details necessary to clarify the nature of her claims, Plaintiff's SAC appears to allege that various, lawyers, state and county judicial and law enforcement officials[1] and the "State of Texas" violated her civil rights under the United States Constitution and Texas state law. ECF No. 15 at 2.

On August 3, 2022, Plaintiff called Comal County 911 to report an attack from the night before and seek emergency assistance. *Id*. at 20, 43. She alleges that Defendant Erick Vargas, an Officer of Comal County Sheriff's Office ("Vargas"), and another official arrived at her home and began to taze her dog. *Id*. at 20. She alleges that Vargas coerced her into leaving her home under false pretenses but failed to investigate the situation or provide medical assistance. *Id*. Plaintiff

---

[1] Defendants Mark Reynolds, Jennifer Tharp, Erick Vargas, Rebekah Coons, Joshua Ray, Mark Sowell, Andrew Leonie, Joe Gonzales, Fabian Chapa, Phillip Ayala, Gary Noegel, Jennifer Smith, Rocky Millican, Patrice King, Gina Jones Motz, and Neil Calfas.

further alleges that Vargas denied her access to her own medical supplies, money, car keys, and communication devices. *Id*.

Firefighters employed by the Bulverde-Spring Branch Fire Department then allegedly entered Plaintiff's home without first checking her for injuries. *Id*. at 43. Subsequently, Plaintiff "demanded that no one else enter her home without a valid search warrant." *Id*. at 21.

At some later point, Defendant Joshua Ray, a Texas Ranger ("Ray"), arrived at her home. *Id*. at 35. Plaintiff alleges that Ray failed to provide or facilitate medical care, all the while repeatedly demanding that she "recount the incident." *Id*. Ray then declared Plaintiff's home a crime scene. *Id*. at 36. Plaintiff further alleges that Ray made an "unjustified demand for Plaintiff's arrest and imprisonment" and demanded the "kidnapping of Plaintiff . . . through the unlawful arrest [by] the Comal County Sheriff's department." *Id*. at 35. Plaintiff alleges that officials "forcibly search[ed] her home without consent or legal authorization for over 24 hours." *Id*. at 3. Plaintiff also contends that Ray "falsely stated he was charging Plaintiff with murder despite no official filing or lawful warrant." *Id*. Defendant Comal County Lead Investigator Rebekah Coons ("Coons") later arrived at the scene and "failed to render Plaintiff aid" while "unlawfully seiz[ing] Plaintiff's home as a crime scene." *Id*. at 27.

On August 5, 2022, Plaintiff was informed by a magistrate judge of the charges against her. *Id*. at 47. The Magistrate allegedly determined that she was a flight risk and conditioned her release on the surrender of her passport and provision of a DNA sample. *Id*.

On the same date, Plaintiff alleges that her counsel, Defendant Gina Jones Motz, "unlawfully removed her from her designated jail area and coerced her into a situation to solicit bail bond and attorney representation services." *Id*. at 88. It appears, based on later

communications with Motz described in the SAC, that Plaintiff ultimately retained Motz as counsel. *See* EFCF No. 15 at 89.

In August 2022, Plaintiff hired additional counsel, Defendant Neil Calfas ("Calfas"), who informed Plaintiff that her case should have been dismissed already and suggested that the DNA sample requested as a condition of release was unjustified. *Id*. at 94.

In August 2022, Plaintiff was given conditions of release which included monthly check-ins with pre-trial official Joe Gonzales. *Id*. at 55. Plaintiff alleges that Gonzales forced Plaintiff to make monthly payments and pay unauthorized fees under the "stated threat of lawful consequences." *Id*. Plaintiff alleges that she challenged the "unlawful financial demands" in March of 2024 and that Plaintiff was "issued a full refund of the unlawfully collected payments." *Id*. at 56. Plaintiff alleges that Gonzales was replaced by pre-trial official Fabian Chapa in the summer of 2023, but she was not informed of the change. *Id*. at 62. Plaintiff alleges that, despite the fact her case had been closed, Chapa sent her a text message that stated she was still under financial obligation and under investigation. *Id*. Plaintiff alleges that Chapa acknowledged the error and apologized to her. *Id*.

In August 2022, Plaintiff alleges that Comal County Sheriff's Public Information Official Jennier Smith maliciously and willfully published false and defamatory statements accusing Plaintiff of tampering with evidence. *Id*. at 77.

In August 2022, Plaintiff alleges that former Comal County Sheriff Investigator Rocky Millican disseminated false public narratives about Plaintiff by making statements to the media claiming that the investigation was ongoing and that "toxicology results were pending." *Id*. at 81.

In August 2023, Plaintiff met with Attorney Calfas and expressed concern that her civil rights might have been violated. *Id*. at 94. Plaintiff alleges that Attorney Calfas told her that "she

has no rights." *Id*. Attorney Calfas also encouraged Plaintiff to speak with District Attorney Jennifer Tharp for a third time, which she alleges falsely implied that the case would be closed if she agreed to the interview. *Id*. at 95.

Plaintiff also alleges that she sent a series of Facebook messenger chats to Attorney Calfas and, based on his responses, doubted his competence. *Id*. Plaintiff then terminated Attorney Calfas. *Id.* Plaintiff requested the money that she had paid Attorney Calfas for his legal services back, but he refused. *Id*. As a result, Plaintiff alleges that she was forced to allow him to remain on the case. *Id*. Plaintiff alleges that Attorney Calfas then failed to appear at a subsequent court date and failed to notify Plaintiff of that hearing. *Id*.

In November 2023, Plaintiff alleges that she "demanded a straight dismissal action from the Defendant Motz." *Id*. at 89. Plaintiff alleges that she was "dismissed with prejudice on the sham case in which all the defendants herein are a party to." *Id*.

In March 2024, Plaintiff asked the Texas Department of Public Safety's Office of the Inspector General to investigate the misconduct of Ranger Ray, citing "clear constitutional violations warranting accountability and lawful relief." *Id*. at 69, Plaintiff alleges that DPS OIG official Phillip Ayala was obligated to investigate misconduct but refused to do so. *Id*.

At some point, Plaintiff alleges that she asked Comal County Sheriff's Office investigator Gary Noegel to investigate "fraudulent and unlawful practices" occurring with the Comal County Jail and the Comal County Bail Bond Board. *Id*. at 73. Plaintiff alleges that the Investigator failed to act on Plaintiff's request. *Id*.

In March of 2024, Plaintiff alleges that she sent a complaint concerning misconduct and corruption with the Comal County Bail Bond Boad and the Comal County Jail to Patrice King, a

secretary official at the Comal County Bail Bond Board. *Id*. at 85. Plaintiff alleges that King

forwarded the complaint but also suggested to investigators that Plaintiff had been untruthful. *Id*.

## LEGAL STANDARD[2]

Courts may dismiss claims for "failure to state a claim upon which relief can be granted"

under Rule 12(b)(6) *sua sponte*, provided that the plaintiff is provided notice and an opportunity

to respond. *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1173, 1177 (5th Cir. 2006) (citing

*Shawnee Int'l, N.V. v. Hondo Drilling Co.*, 742 F.2d 234, 236 (5th Cir. 1984)).

To survive Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as

true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A plaintiff

"must provide enough factual allegations to draw the reasonable inference that the elements exist."

*Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 995 F. Supp. 2d 587, 602

(N.D. Tex. Feb. 3, 2014) (citing *Patrick v. Wal–Mart, Inc.-Store No. 155,* 681 F.3d 614, 617 (5th

Cir. 2012)); *see also Torch Liquidating Trust ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d

377, 384 (5th Cir. 2009) ("[T]he complaint must contain either direct allegations or permit properly

drawn inferences to support every material point necessary to sustain a recovery") (internal

quotation marks and citations omitted).

---

[2] The Court notes that Plaintiff is proceeding *pro se* in this case. When reviewing a *pro se* plaintiff's complaint, the Court must construe the allegations liberally, holding the *pro se* to less stringent pleading standards than those applicable to lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). However, a party's *pro se* status does not offer him "an impenetrable shield, for one acting *pro se* has no license to harass others, clog the judicial machinery with meritless litigation and abuse already overloaded court dockets." *Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 359 (5th Cir. 1986).

In considering dismissal under Rule 12(b)(6), all factual allegations from the complaint should be taken as true, and the facts are to be construed in the light most favorable to the nonmoving party. *Fernandez-Montes v. Allied Pilots Ass'n.*, 987 F.2d 278, 284 (5th Cir. 1993). Still, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "'[N]aked assertions' devoid of 'further factual enhancement,'" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *see also R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (stating that the Court should neither "strain to find inferences favorable to the plaintiffs" nor accept "conclusory allegations, unwarranted deductions, or legal conclusions.").

## DISCUSSION

The SAC names sixteen defendants and alleges 11 violations of federal law and 37 violations of state law claims.

## I.    Claims dismissed <u>without</u> leave to amend

As discussed herein, Plaintiff has asserted several claims against Defendants that may not be sued under federal or state law. Accordingly, these claims are **DISMISSED WITH PREJUDICE**, and should not appear in any amended pleading.

### A.    Claims against the State of Texas are barred by sovereign immunity[3]

In most cases, Eleventh Amendment sovereign immunity bars private suits against nonconsenting states in federal court. *See Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253 (2011) ("Sovereign immunity is the privilege of the sovereign not to be sued without its

---

[3] Although not listed in the SAC caption as a defendant, the SAC contains at least one allegation against the "State of Texas" (ECF No. 15 at 3 ¶ 9).

consent.")). Unless the state has waived sovereign immunity or Congress has expressly abrogated it, the Eleventh Amendment bars the suit. *See AT&T Commc'ns v. Bellsouth Telecomms. Inc.*, 238 F.3d 636, 644-45 (5th Cir. 2001). Here, there is no reason to believe that Texas's sovereign immunity has been waived by the Legislature or abrogated by Congress and, accordingly, Plaintiff's claims against the State of Texas are barred by the doctrine of sovereign immunity and **DISMISSED WITH PREJUDICE**.

### B.    Claims against Judge Leonie are barred by absolute judicial immunity

Plaintiff also seeks to recover from Defendant Magistrate Judge Andrew D. Leonie for defamation and for alleged violations of rights under the First, Fourth, Fifth, and Sixth Amendments to the U.S. Constitution. ECF No. 15 at 47–49.

"Judges of all stripes enjoy absolute immunity from suits for damages when the action complained of was taken in their judicial capacity, even if that action 'was in error, was done maliciously, or was in excess of [their] authority.'" *Burns v. Mayes*, 369 F. App'x 526, 530 (5th Cir. 2010) (citing *Stump v. Sparkman*, 435 U.S. 349, 356 (1978)).

Plaintiff's claims against Judge Leonie are barred by absolute judicial immunity and are **DISMISSED WITH PREJUDICE**.

### C.    Claims against defense attorneys

#### 1.  Section 1983 Claims Against Non-State Actors

Plaintiff alleges that Attorneys Motz and Calfas violated her Fourth Amendment Rights by the "unlawful search and removal from jail room." ECF No. 15 at 92, 98.

To the extent Plaintiff seeks to assert a claim against her attorneys under 42 U.S.C. § 1983, it fails because Plaintiff has pled no facts that either attorney is a state actor. To pursue a claim under section 1983, a plaintiff must allege (1) that she was deprived of a right secured by the

Constitution or laws of the United States; and (2) that the deprivation was caused by one acting under color of state or federal law. *West v. Atkins,* 487 U.S. 42, 48 (1988).

It is well established that an attorney does not act under color of state law in representing a defendant in a criminal case. *Hill v. Cox*, No. 3:11-CV-1209-O BK, 2011 WL 5101571, at *1–2 (N.D. Tex. Sept. 9, 2011), *report and recommendation adopted*, No. 3:11-CV-1209-O, 2011 WL 5101506 (N.D. Tex. Oct. 25, 2011) (citing *See Polk County v. Dodson,* 454 U.S. 312, 324–25 (1981) (public defender does not act under color of state law when performing lawyer's traditional functions in representing defendant in criminal case) and *Mills v. Criminal Dist. Court No. 3,* 837 F.2d 677, 679 (5th Cir. 1988) (court appointed attorneys are not official state actors)).

Plaintiff's claims again Motz and Calfas alleging violations of her constitutional rights are **DISMISSED WITH PREJUDICE**.

### 2. Violations of the Texas Disciplinary Rules of Professional Conduct

The TDRPC "set forth the proper conduct of lawyers 'solely for the purpose of discipline within the profession.'" *See McGuire, Craddock, Strother & Hale P.C. v. Transcontinental Realty Inv'rs, Inc.*, 251 S.W.3d 890, 896 (Tex. App.—Dallas 2008, pet. denied) (quoting 1 J. Hadley Edgar, Jr. & James B. Sales, TEXAS TORTS & REMEDIES § 12.02[1][a][ii][A] (2000)). A violation of these rules "does not give rise to a private cause of action." *Blankinship v. Brown*, 399 S.W.3d 303, 311 (Tex. App.—Dallas 2013, pet. denied) (quoting Tex. Disciplinary R. Prof'l Conduct, Title 2, Subtitle G, App. Art. X § 9, preamble ¶ 15).

Accordingly, any claim that Plaintiff has filed under the Texas Disciplinary Rules of Professional Conduct against any Defendant are **DISMISSED WITH PREJUDICE**.

### 3. State-law claims

Given the dismissal of Plaintiff's federal claims against Mott and Calfas, the Court declines to exercise subject matter jurisdiction under 28 U.S.C. § 1367(c)(3) over Plaintiff's remaining state-law claims for unjust enrichment, breach of fiduciary duty, and violations of the DTPA against Mott and Calfas, and those claims are **DISMISSED WITHOUT PREJUDICE**.

### D.    Standalone claims under 42 U.S.C. § 1983

Plaintiff purports to bring standalone claims for violations of § 1983 against Defendants Phillip Ayala (Texas Department of Public Safety, Office of the Inspector General), Gary Noegel (Comal County Sheriff's Investigator), Rocky Millican (Comal County Sheriff's Official), Jennifer Smith (Comal Co. Public Information Officer), and Patrice King (Comal County Bail Bond Board Department Official) for deprivation of rights under the color of law.

"Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (citation and internal quotations omitted). Thus, Plaintiff's standalone Section 1983 claim fails as a matter of law, and the Court addresses only violations of specific constitutional rights enumerated in the SAC.

Similarly, Plaintiff purports to assert claims for defamation, intentional infliction of emotional distress ("IIED"), negligence, and gross negligence under § 1983. The Supreme Court in *Baker v. McCollan*, 443 U.S. 137, 146 (1979), held that many acts that might constitute a violation of state tort law do not amount to constitutional violations. *See Geter v. Fortenberry*, 849 F.2d 1550, 1556 (5th Cir. 1988); *Cook v. Houston Post*, 616 F.2d 791, 794 (5th Cir. 1980).

Accordingly, Plaintiff has no cognizable claim for defamation, IIED, negligence, or gross negligence under § 1983, and those claims are **DISMISSED WITH PREJUDICE**. The Court construes these claims as state law tort claims and discusses them below.

### E.      Fifth Amendment claims against non-federal actors

Plaintiff brings Fifth Amendment claims against Defendants Reynolds, Tharp, Vargas, Coons, Ray, Gonzales, Chapa, and Noegel. Plaintiff alleges that the Defendants "den[ied] due process, conduct[ed] sham hearings, depriv[ed] Plaintiff of protected interests, the right to be heard, [and] procedural due process." ECF No. 15 at 5–6, 12–14, 20–21, 27–29, 35–37, 55–56, 62–63, 73–73. Plaintiff also alleges that the Defendants violated "equal protection" under the Fifth Amendment. *Id.* The due process clause of the Fifth Amendment applies only to federal actors. *See Blackburn v. City of Marshall*, 42 F.3d 925, 931 n.3 (5th Cir. 1995).

Plaintiff does not allege that Defendants Reynolds, Tharp, Vargas, Coons, Ray, Gonzales, Chapa, or Noegel are federal actors, and her claims against them alleging violations of her Fifth Amendment rights are **DISMISSED WITH PREJUDICE**.

### F.      Sixth Amendment Violation of Denial of a Fair Trial and Legal Counsel

The Sixth Amendment states that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury . . . and to have the Assistance of Counsel for his defence." U.S. CONST. amend. VI. Plaintiff alleges that Defendants Reynolds and Tharp infringed on her rights to a fair and speedy trial and Defendants Millican and Smith violated her rights to a fair trial and impartial jury. ECF No. 15 at 5, 13, 78, 82.

Plaintiff has failed to provide any facts regarding the disposition, timeline, or other details of her criminal case, included whether it involved a jury trial. Accordingly, she has failed to plausibly challenge the impartiality of any such jury. Finally, Plaintiff alleges Erick Vargas, Rebekah Coons, Joshua Ray, Mark Sowell, Joe Gonzales, Fabian Chapa, Jennifer Smith, and Rocky Millican violated her Sixth Amendment right by the "denial of . . . legal counsel." *See* ECF

No. 15. Plaintiff admits that she was represented by legal counsel, however, ECF No. 15 at 3, 88–90, 94, and fails to explain how any of the Defendants purportedly denied her right to counsel.

Accordingly, Plaintiff has failed to plausibly allege a claim for violations of her Sixth Amendment rights and her claims are **DISMISSED WITH PREJUDICE**.

### G.    Eighth Amendment Claims for Cruel and Unusual Punishment

Plaintiff alleges that thirteen of the Defendants violated her Eighth Amendment right against cruel and unusual punishment under a variety of theories. "While "the constitutional rights of a convicted prisoner spring from the Eighth Amendment's prohibition on cruel and unusual punishment," *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639 (5th Cir. 1996) (citing *Estelle v. Gamble*, 429 U.S. 97 (1976), "[t]he constitutional rights of a pretrial detainee . . . flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment." *Id.* (citing *Bell v. Wolfish*, 441 U.S. 520 (1979)).

Plaintiff's allegations arise out of her treatment as a pretrial detainee, not a convicted prisoner. *See* ECF No. 15. Because the Eighth Amendment protects the rights of *convicted* prisoners, Plaintiff's claims for violations of her Eighth Amendment rights are **DISMISSED WITH PREJUDICE**.

### H.    Ninth Amendment Claims

Plaintiff asserts Ninth Amendment claims against Defendants Reynolds, Tharp, Vargas, Coons, Ray, Sowell, Leonie, Gonzales, Chapa, Smith, and Millican. The Ninth Amendment does not specify any rights of the people and is not a vehicle for bringing civil rights claims." *Mitchell v. Town of Lake Arthur*, No. 1:16-cv-0064, 2016 WL 2726561, at *2 (W.D. La. May 9, 2016*); see also Richardson v. Sewerage & Water Bd.* No. 95-cv-3033, 1996 WL 288275, at *2 (E.D. La. May 30, 1996) (holding that civil rights claims are not cognizable under the Ninth Amendment).

Accordingly, Plaintiff's claims against alleging violations of her Ninth Amendment rights are **DISMISSED WITH PREJUDICE**.

### I.    Claims for Violations of Federal Criminal Statutes

Plaintiff purports to bring claims against Defendants Ayala and Noegel for violations of two federal criminal statutes (18 U.S.C. § 1503 and 18 U.S.C. § 1519). "Private citizens," however, "do not have the right to bring a private action under a federal criminal statute." *Sappore v. Arlington Career Ins.*, No. 3:09-CV-1671-N, 2010 WL 446076, at *2 (N.D. Tex. Feb. 8, 2010) (citing *Pierre v. Guidry*, 75 F. App'x 300, 300 (5th Cir. 2003) (per curiam)).

Accordingly, Plaintiff's claims for violations of federal criminal statutes are **DISMISSED WITH PREJUDICE**.

### J.    Claims for Violations of the Texas Penal Code

Similarly, Plaintiff asserts several claims for violations of the Texas Penal Code against Defendants Ayala, Smith, King, Noegel, Millican, and Motz. But "Texas does not recognize private causes of action for penal code violations." *Joyner v. Defriend*, 255 S.W.3d 281, 283 (Tex. App.—Waco 2008, no pet.) (citing *Trevino v. Ortega*, 969 S.W.2d 950, 953 (Tex. 1998)); *see, e.g.*, *Evans v. City of Dallas*, No. 3:16-CV-0561-L, 2017 WL 958607, at *6 (N.D. Tex. Mar. 13, 2017) (dismissing Texas Penal code claim for failure to state a claim because "no civil cause of action exists for violation of a state criminal statute pursued under state criminal statute").

Accordingly, Plaintiff's claims for violations of the Texas Penal Code are **DISMISSED WITH PREJUDICE**.

### K.    Claims for Violations of the Texas Constitution

Plaintiff alleges claims for damages for violations of equal protection, free speech, unreasonable search and seizure, speedy trial and right to counsel, excessive bail/cruel and unusual

punishment, right to jury trial, due course of law, right to petition, and the bill of rights exception sections of the Bill of Rights to the Texas Constitution. *See* Tex. Const. art. 1, §§ 3, 8, 9, 10, 13, 15, 19, 27, 29.

The Texas Supreme Court, however, has determined that civil rights claims under the state constitution are unavailing because tort damages are not recoverable for violations of the Texas Constitution. *City of Beaumont v. Bouillion*, 896 S.W.2d 143, 147 (Tex. 1995) (noting that "there is no implied private right of action for damages" when an individual alleges a violation under the Texas Constitution).

Accordingly, Plaintiff's claims for damages for violations of the Texas Constitution are **DISMISSED WITH PREJUDICE**.

### L.      Violation of the Texas Whistleblower Act

Plaintiff asserts a claim against Defendant King under the Texas Whistleblower Act. The Texas Whistleblower Act prohibits a governmental entity from taking an adverse employment action against a public employee who reports the employer's violation of law, in good faith, to an appropriate law enforcement agency. *City of Fort Worth v. Pridgen*, 653 S.W.3d 176, 182 (Tex. 2022) (citing Tex. Gov't Code § 554.002(a)). The Act defines a "public employee" as "an employee or appointed officer other than an independent contractor who is paid to perform services for a state or local governmental entity. TEX. GOV'T CODE § 554.001(4). Plaintiff has not pled any facts suggesting that she is a government employee or suffered an adverse employment action in that capacity.

Accordingly, Plaintiff's claims for damages for violations of the Texas Whistleblower Act are **DISMISSED WITH PREJUDICE**.

### M.    Intentional Infliction of Emotional Distress

Plaintiff asserts claims of intentional infliction of emotional distress ("IIED") against Defendants Smith, Millican, King, and Sowell. ECF No. 45, 79, 83, 86.

Pursuant to Texas law, the tort of intentional infliction of emotional distress is a "gap-filler" tort, "judicially created for the limited purpose of allowing recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress." *Hoffman-LaRoche Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004) (citing *Standard Fruit and Vegetable Co. v. Johnson*, 985 S.W.2d 62, 68 (Tex. 1999)). Moreover, intentional infliction of emotional distress claims are "never intended to supplant or duplicate existing statutory or common-law remedies." *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 (Tex. 2005) (quoting *Zeltwanger*, 144 S.W.3d at 447).

Because Plaintiff's tort claim for IIED arises from the same factual allegation as the alleged violations of Texas tort law, her IIED claim is **DISMISSED WITH PREJUDICE**. *See Crisalli v. Willis Re Inc.*, 560 F. Supp. 2d 512, 514 (E.D. Tex. 2006) (dismissing the plaintiff's claims for IIED because the conduct underlying the IIED claim was identical to another tort claim).[4]

---

[4] The Court further determines that the Plaintiff fails to state a claim for IIED. To establish an IIED claim in Texas, the Plaintiff must show a Defendant (1) acted intentionally or recklessly (2) in an extreme and outrageous manner (3) that caused [her] to suffer emotional distress (4) that was severe. *Weller v. Citation Oil & Gas Corp.*, 84 F.3d 191, 195 (5th Cir. 1996). In Texas, courts have noted that behavior that meets the "outrageous" standard must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Twyman v. Twyman*, 855 S.W. 2d 619, 621 (Tex. 1993). The Plaintiff offers no facts to support an allegation that meets the outrageousness standard of Texas law.

### N.    Defamation [5]

Plaintiff asserts claims for defamation against Defendant Sowell (under the Texas Constitution), against Defendants Smith and Millican (under Texas Civil Practice and Remedies Code § 73.001), and against King (under a common-law theory).

Again, because Texas Constitution does not create a private right of action for damages, the Court construes Plaintiff's claim against Sowell as a claim for defamation under Chapter 73 of the Texas Civil Practice and Remedies Code. In Texas, the limitations for libel and slander claims is one year. TEX. CIV. PRAC. & REM. CODE § 16.002. Plaintiff alleges in her complaint that the defamatory actions by Sowell, Smith, and Millican occurred in August of 2022. Plaintiff filed her original complaint, almost two years later in July of 2024, and amended complaints subsequent to that date. Accordingly, Plaintiff's claims for defamation against these Defendants are barred by the statute of limitations.

Plaintiff's defamation claim against Defendant King is barred because King's communication was privileged. ECF No. 15 at 86. Plaintiff alleges that she sent a complaint regarding misconduct and corruption within the Comal County Bail Bond Board and the Comal County Jail. *Id.* at 85. Plaintiff further alleges that King received the complaint which was forwarded for investigation. *Id.* Plaintiff alleges that King, "in an email to investigators falsely suggested Plaintiff was untruthful," which implied and created unjustified doubt regarding the legitimacy of Plaintiff's complaint, thereby damaging Plaintiff's credibility and reputation." *Id.*

A cause of action for defamation under Texas law requires the plaintiff to prove: (1) the defendant published a false statement; (2) defamatory to the plaintiff, in that it damaged the

---

[5] Defamation is the act of injuring a person's reputation by making a false statement. Defamation can occur in two ways: by libel or slander. Libel is the written form of defamation, codified in TEX. CIV. PRAC. & REM. CODE § 73.001. Slander is the spoken form of defamation, which is not codified in Texas, but is recognized at common law. *Cain v. Hearst Corp.*, 878 S.W.2d 577, 580 (Tex. 1994).

plaintiff's reputation, exposing him to financial injury; and (3) the defendant made the statement negligently as to its truth. *Green v. CBS Inc.*, 286 F.3d 281, 283 (5th Cir. 2002).

Communications made in the context of judicial, quasi-judicial, or legislative proceedings, however, are absolutely privileged and cannot form the basis of civil liability. *Shanks v. AlliedSignal, Inc.*, 169 F.3d 988, 992 (5th Cir. 1999). "An absolutely privileged communication is one for which, due to the occasion upon which it was made, no civil remedy exists, even [if] the communication is false and was made or published with express malice." *Perdue, Brackett, Flors, Utt & Burns v. Linebarger, Goggan, Blair, Sampson & Meeks, L.L.P.*, 291 S.W.3d 448, 451 (Tex. App.—Fort Worth 2009, no pet.). Under Texas law, "even communications made in contemplation of or preliminary to a quasi-judicial proceeding are privileged if they concern a matter that the quasi-judicial body is authorized to investigate and decide." *Perdue*, 291 S.W.3d at 452; *see also 5–State Helicopters, Inc. v. Cox*, 146 S.W.3d 254, 259 (Tex. App.—Fort Worth 2004, pet. denied) (determining that a complaint to the Federal Aviation Administration about behavior of agents prior to any investigation or proceeding is privileged).

Because Plaintiff alleges that the alleged defamatory communication made by King occurred during the investigatory process of a submitted complaint to the Comal County Bail Bond Board and does not deny that the Board is authorized to investigate the complaints it receives, any alleged communication made by King pertaining to that complaint is privileged.

Accordingly, Plaintiff's defamation claims are **DISMISSED WITH PREJUDICE**.

## II.    Federal Civil Rights Violations 42 U.S.C. § 1983

To recover under Section 1983, a plaintiff must allege "(1) the deprivation of a federally protected right, and (2) that the deprivation was committed by a person acting under color of state law." *Velasquez v. City of Westwego*, 531 F. Supp. 3d 1142, 1153 (E.D. La. Mar. 31, 2001) (citing

*West v. Akins*, 487 U.S. 42, 48 (1988). Whether seeking to impose liability against a municipality or an individual officer, a Section 1983 plaintiff must first allege that she has been deprived of a right secured by the United States Constitution or federal law. *Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004) (holding that in order to establish a Section 1983 claim, there must be "a deprivation of a right secured by federal law[.]").

The Fifth Circuit further explained that "personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) (citing *Rizzo v. Goode*, 423 U.S. 362, 371–72 (1976) (affirmative link needed between injury and conduct of defendant); *see also Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983) (explaining that a defendant "must be either personally involved in the acts causing the deprivation of a person's constitutional rights, or there must be a causal connection between an act of the [defendant] and the constitutional violation sought to be redressed.").

A.    **First Amendment Violations**

1.  **Retaliation**

"The First Amendment prohibits both direct limits on individual speech and adverse governmental action against an individual in retaliation for the exercise of protected speech activities." *Cripps v. State Dep't of Agric. & Forestry*, 819 F.3d 221, 229 (5th Cir. 2016) (citation omitted).

To succeed on a First Amendment retaliation claim, Plaintiff must demonstrate that (1) she was engaged in a constitutionally protected activity; (2) Defendants' actions caused her to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) Defendants' adverse actions were substantially motivated against Plaintiff's exercise of

constitutionally protected conduct. *Alexander v. City of Round Rock*, 854 F.3d 298, 308 (5th Cir. 2017).

In her complaint, Plaintiff alleges that Defendants Vargas, Ray, Coons, and Sowell violated her First Amendment rights through "retaliation for protected speech." ECF No. 15 at 21; *id.* at 27 (alleging that Defendant Coons violated Plaintiff's rights when she "prejudicially classified Plaintiff as a criminal"); *id.* at 55–56 (alleging that Gonzales and Chapa committed "unlawful extortion," and "coercion . . . demonstrat[ing] the deliberate campaign of harassment and intimidation" in violation of her First Amendment rights).

Plaintiff fails to plead any facts supporting the elements needed to succeed on a First Amendment retaliation claim beyond conclusory statements that Defendants retaliated against her for protected speech.

### 2.    Right to Petition the Government

The First Amendment prohibits Congress from "mak[ing a] law . . . abridging . . . the right of the people . . . to petition the Government for a redress of grievances. U.S. CONST. amend. I. The requirements of the First Amendment generally apply to the states through the Fourteenth Amendment. *Meyer v. Grant*, 486 U.S. 414, 420 (1988). States are not required to grant their citizens a right to seek reform through popular initiatives, but if they do so, they must comply with the First Amendment's protection of freedom of expression. *John Doe 1 v. Reed*, 561 U.S. 186, 195 (2010). The First Amendment does not mandate a result once such petitions are received. *See Minnesota State Bd. For Cmty. Colls. V. Knight*, 465 U.S. 271, 285 (1984).

Plaintiff alleges that Defendants Reynolds and Tharp blocked, silenced, and ignored her efforts to petition the government for a redress of grievances. ECF No. 15 at 5, 13. However, Plaintiff fails to offer any facts supporting her allegations as to how Defendant Tharp blocked or

silenced her efforts to petition the government. Plaintiff offers conclusory statements regarding Defendant Reynolds asserting that he "actively ignored proper investigations" without offering any facts to support her claim. ECF No. 15 at 4.

Plaintiff also alleges that Defendants Gary Noegel (a Comal County Investigator), Rocky Millican, (former Comal County Official), and Jennifer Smith (Comal County Public Information Official) violated her First Amendment right to petition for redress and free speech. *Id*. at 74, 78, 82. Plaintiff concludes that Defendant Noegel "neglected his official duty and failed to act upon a legitimate request for oversight" and "refused to investigate Plaintiff['s] request for an internal investigation." *Id.* at 73. Plaintiff makes similar conclusory assertions pertaining to Defendant Millican ("[b]y suppressing Plaintiff's ability to counter the false narrative and petition for redress, Millican violated her first amendment rights") and Defendant Smith (Smith's "false and defamatory statements also obstructed Plaintiff's First Amendment right to petition the government for redress . . . ." *Id*. at 81, 77. Plaintiff offers no facts to support her allegations.

Plaintiff next alleges that Defendant Ayala failed to investigate Ranger Ray for misconduct and his refusal to act deprived Plaintiff of her First Amendment rights. *Id*. at 69. Similarly, Plaintiff alleges that Defendant Patrice King "failed to follow up" after forwarding a complaint concerning misconduct and corruption resulting in a violation of Plaintiff's First Amendment rights. ECF No. 15 at 85. Plaintiff has failed to plead any facts showing that Defendant Ray or King's actions chilled her speech or willingness to exercise any other First Amendment rights.

Apart from offering no facts to support her allegations, Plaintiff appears to allege violations stemming from what occurred after she exercised her right to petition the Government. An allegation that Defendants failed to investigate a grievance fails to state a claim. *See Smith v. Arkansas State Highway Emp., Local 1315*, 441 U.S. 463, 465 (1979) ("[T]he First Amendment

does not impose any affirmative obligation on the government to listen[] [or] to respond . . . ."); s*ee also City of Hearne, Texas v. Johnson*, 929 F.3d 298, 301 (5th Cir. 2019) ("It is not enough to create standing to claim that the process for handling [her] petition was not followed."). Plaintiff alleges no restriction or prohibition regarding her right to petition, she merely alleges injury due to perceived action or lack of action after her petition was received. As pled, the allegations fail to state a claim for a First Amendment violation.

### B.    Fourth Amendment Violations

Plaintiff alleges that Defendants Reynolds, Tharp, Vargas, Coons, Ray, Sowell, Gonzales, Chapa and Ayala violated her Fourth Amendment rights. ECF No. 15 at 4–6, 12–15, 20–22, 27–29, 35–37, 43–45, 55–57, 62–63, 69–71.

Plaintiff alleges that Defendant Reynolds "oversaw the unconstitutional actions and unlawful arrest and detention of Plaintiff" (ECF No. 15 at 4) and that he violated the Fourth Amendment by "false arrest, fabricating evidence, cruel and unusual punishment, [and] failing to protect Plaintiff from harm." *Id*. at 5. Plaintiff alleges that Defendant Reynolds, "acting as sheriff" was "fully aware of the unlawful actions under color of law involving his department officials." *Id*. at 4. In order to state a cause of action under section 1983, a plaintiff "must identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged." *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995) (citation omitted). "Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." *Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 2001) (citation omitted). Plaintiff has not pled any facts suggesting that Defendant Reynolds was personally involved in any of the alleged constitutional violations.

Plaintiff next alleges that Defendant Tharp, acting as elected district attorney, "obstruct[ed] justice, suppress[ed] due process, and perpetuat[ed] oppression" in violation of the Fourth Amendment. ECF No. 15 at 12. Plaintiff also alleges that Defendant Tharp violated her Fourth Amendment rights through "unreasonable searches" and "false arrest, fabricating evidence, cruel and unusual punishment, failing to protect Plaintiff from harm." *Id*. at 13. Again, Plaintiff offers no facts pertaining to Defendant Tharp's personal involvement or that she was causally connected to the alleged violation of her constitutional rights. Plaintiff merely offers conclusory assertions regarding Defendant Tharp's alleged violations of Plaintiff's rights.

Next, Plaintiff alleges that Defendant Vargas violated her Fourth Amendment rights "by false arrest, fabricating evidence, cruel and unusual punishment, [and] failing to protect Plaintiff from harm." ECF No. 15 at 21. Plaintiff alleges that Defendant Vargas arrived at her house and "begin [sic] to tase her dog," which she alleges "was not threatening them," "constitut[ing] excessive force and unlawful seizure under the fourth amendment." *Id*. at 20. Plaintiff later alleges that Defendant Vargas *attempted* to tase her dog. *Id*. It is unclear from the complaint whether the Defendant attempted to tase Plaintiff's dog or actually tased Plaintiff's dog.

Plaintiff also alleges that Defendant Vargas "failed to provide medical aid" and "den[ied] Plaintiff access to essential belongings, including medical supplies, identification, money, car keys, and communication devices—while falsely designating her home as a crime scene." *Id*. Plaintiff alleges that she called 911 seeking emergency assistance; however, she has failed to provide any facts pertaining to the Defendant's failure to provide medical aid, specifically, Plaintiff has not alleged what medical aid was needed or what, if any, injuries she had at the time the Defendant allegedly failed to provide medical aid. Defendant has likewise failed to provide any

facts pertaining to her allegation that Defendant Vargas "falsely" designated her home as a crime scene.

Next, Plaintiff alleges that Defendant Coons violated her Fourth Amendment Rights by "false arrest, fabricating evidence, cruel and unusual punishment, [and] failing to protect Plaintiff from harm." ECF No. 15 at 28. Plaintiff alleges that Defendant Coons "conspired with officers to unlawfully seize Plaintiff's home as a crime scene." Plaintiff offers no facts to support her allegation. Plaintiff then alleges that Coons "prejudicially classified Plaintiff as a criminal." Plaintiff fails to offer any facts in support of this allegation or explain how the alleged classification of Plaintiff was a violation of the Fourth Amendment.

Plaintiff alleges that Defendant Sowell violated her Fourth Amendment rights by "unlawful entry, illegal search and seizure, deprivation of property without due process." ECF No. 15 at 44. Plaintiff has not pled any facts that support her conclusory allegations that Defendant Reynolds was personally involved in any of the alleged constitutional violations.

Plaintiff alleges that Defendant Ray violated her Fourth Amendment Rights by "false arrest, fabricating evidence, cruel and unusual punishment, [and] failing to protect Plaintiff from harm." ECF No. 15 at 36. Plaintiff also claims that Defendant Ray "failed to provide or facilitate medical assistance" in violation of her Fourth Amendment rights. *Id*. at 35. Plaintiff fails to offer any facts to support this allegation.

Next, Plaintiff alleges that Defendant Ray "entered Plaintiff's home without a warrant" and "denied Plaintiff access to a copy of the invalid search warrant." *Id*. Plaintiff also alleges that at a later time she was presented with a search warrant, but it was "invalid, as it lacked the necessary judicial signature from a judge within the appropriate jurisdiction, rendering it lawfully defective." *Id*. at 3. Plaintiff also alleges that Defendant Ray's "unjustified demand for Plaintiff's arrest and

imprisonment without due process constituted unlawful detention" and "the demand kidnapping of Plaintiff by Former Texas Ranger Joshua Ray through the unlawful arrest of the Comal County Sheriff's Department" is a violation of her Fourth Amendment rights. *Id*. at 35. Plaintiff first states that Defendant Ray entered her home without a warrant but subsequently alleges she was provided a copy of the warrant but that it was invalid. These claims are contradictory and unclear. Plaintiff provides no facts regarding her arrest, or how Defendant Ray was involved in any arrest of Plaintiff.

Plaintiff alleges that Defendants Gonzales and Chapa violated her Fourth Amendment rights by "false arrest, fabricating evidence, cruel and unusual punishment, [and] failing to protect Plaintiff from harm." *Id*. at 56, 63. Plaintiff states that she was "given conditions of release which included monthly check-ins with pre-trial official and Defendant Joe Gonzales." *Id*. at 55. Plaintiff alleges that Defendant Chapa later replaced Defendant Chapa as her pre-trial official. *Id*. at 62. Plaintiff fails to provide any facts supporting her allegations that Defendants Gonzales or Chapa violated her Fourth Amendment rights.

Plaintiff alleges that Defendant Ayala violated her Fourth Amendment rights by "deliberately deflecting responsibility and refusing to act on clear violation . . . ." *Id*. at 69. Plaintiff provides no facts supporting that allegation.

C.     **Fourteenth Amendment Violations**

Plaintiff alleges Fourteenth Amendment violations under 42 U.S.C. § 1983 against Defendants Reynolds, Tharp, Vargas, Coons, Leonie, Ray, Sowell, Gonzales, Chapa, Ayala, Noegel, Smith and Millican. ECF No. 15 at 4–6, 12–14, 20–22, 27–29, 35–37, 45, 47–49, 55–56, 63, 69–70, 73–74, 77–78, 82–83.

The Fourteenth Amendment right to due process protects an individual "against arbitrary action of government." *County of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998). When considering a due process challenge, the court must determine whether the acts of the governmental officer are "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Rosales-Mireles v. United States*, 585 U.S. 129, 138 (2018). "[T]he shock the conscience standard is satisfied where the conduct was intended to injure in some way unjustifiable by any government interest, or in some circumstances if it resulted from deliberate indifference." *Id*. (citation and internal quotations omitted).

The Equal Protection Clause of the Fourteenth Amendment requires that similarly situated persons be treated alike. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To properly raise an equal protection claim, Plaintiff must offer facts demonstrating that "[s]he received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from discriminatory intent." *Priester v. Lowndes County*, 354 F.3d 414, 424 (5th Cir. 2004).

Plaintiff has offered no facts to support allegations that she received different treatment from others in her situation and that the alleged unequal treatment stemmed from discrimination based on her race, gender, or any other status.

As discussed below, Plaintiff asserts in a conclusory fashion that numerous Defendants violated her Fourteenth Amendment rights to due process and equal protection.

**Defendant Reynolds.** Plaintiff alleges that Defendant Reynolds "created a sham hearing for Defendant Attorney-Bail Bondsman Gina Jones Motz" which she asserts "obstruct[ed] Plaintiff's right to due process under the Fourteenth Amendment." *Id*. at 4. Plaintiff has offered no facts to support her allegation.

**Defendant Tharp**. Plaintiff alleges that "Tharp's refusal to dismiss the case despite a lack of probable cause for over a year constitutes malicious prosecution and a direct violation of Plaintiff's due process under the Fourteenth Amendment." ECF No. 15 at 12. Based on this language, and due to Plaintiff's *pro se* status, the undersigned liberally construes this claim as being one for malicious prosecution under the Fourth Amendment, not a Fourteenth Amendment claim. Litigants may bring a Fourth Amendment malicious prosecution claim under § 1983. *Thompson v. Clark*, 596 U.S. 36, 42–44 (2022). Under Fifth Circuit precedent, the elements of such a claim are: "(1) the commencement or continuance of an original criminal proceeding; (2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding; (3) it bona fide termination in favor of the present plaintiff; (4) the absence of probably cause for such proceeding; (5) malice; and (6) damages." *Espinal v. City of Hous.*, 96 F.4th 741, 748 (5th Cir. 2024) (quoting *Armstrong v. Ashley*, 60 F.4th 262, 279 (5th Cir. 2023)). Plaintiff has failed to plead facts to support a malicious prosecution claim.

**Defendant Vargas.** Plaintiff alleges that Defendant Vargas "falsely designated her home as a crime scene" which she alleges was a due process violation. *Id*. at 20. Plaintiff provides no facts to support her allegations against Defendant Vargas. Plaintiff also alleges that Defendant Vargas "failed to investigate the situation or provide medical assistance." *Id*. at 20. Plaintiff provides no facts to support her allegations against Defendant Vargas.

**Defendant Coons.** Plaintiff alleges that Defendant Coons "failed to render Plaintiff aid, and deliberately ignored the reported injuries." *Id*. at 27.

The Fourteenth Amendment's Due Process Clause protects an individual's life, liberty, and property from government action. *Deshaney v. Winnebago Cnty. Dep't Soc. Servs.*, 489 U.S. 189, 196 (1989) (holding that the "Due Process Clauses generally confer no affirmative right to

governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual") (collecting cases); *see also Kovacic v. Villarreal*, 628 F.3d 209, 213 (5th Cir. 2010).

"The Due Process Clause does, however, require the responsible government or governmental agency to provide medical care to persons . . . who have been injured while being apprehended by the police." *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983); *see also Kovacic*, 628 F.3d at 213 (explaining that a "special relationship" "is formed '[w]hen the state, through the affirmative exercises of its powers, acts to restrain an individual's freedom to act on his own behalf "through incarceration, institutionalization, or other similar restraint of personal liberty;" (citing *McClendon v. City of Columbia*, 305 F.3d 314, 324 (5th Cir. 2002) (quoting *Deshaney*, 489 U.S. at 198, 200)). Here, it is unclear from the complaint what, if any, injuries the Plaintiff suffered. It is equally unclear whether the Plaintiff was detained or under arrest at the point where Defendant Coons is alleged to have encountered the Plaintiff. The Plaintiff has failed to allege sufficient facts to demonstrate that Defendant Coons deprived the Plaintiff of her due process rights.

**Defendant Ray.** Plaintiff alleges that Defendant Ray violated her Fourteenth Amendment Right to equal protection. *Id*. at 36, 37. Plaintiff first alleges that Defendant Ray failed to provide or facilitate medical assistance. *Id*. at 35. As discussed above Plaintiff fails to allege sufficient facts to demonstrate Defendant Ray deprived her of her due process rights—she has provided no facts regarding her injuries or whether she was detained or under arrest that the time Defendant Ray encountered the Plaintiff.

Plaintiff next alleges that Defendant Ray "deprived her of her property, attempted to fabricate evidence, and threatened her with a baseless murder charge without probable cause." *Id*.

at 35. Plaintiff offers no facts to support those allegations against Defendant Ray. Plaintiff then alleges that Defendant Ray "fabricate[d] evidence, obstruct[ed] justice, and deprive[d] Plaintiff of legal protections" which "violated 42 U.S.C. § 1983 and the Fourteenth Amendment's Due Process and Equal Protection Clauses." *Id.* at 35. Plaintiff offers no facts to support her allegations against Defendant Ray. Plaintiff also alleges that Defendant Ray declared "Plaintiff's home a crime scene . . . facilitat[ing] the destruction of exculpatory evidence." *Id.* at 36. Plaintiff fails to offer any facts to support these allegations against Defendant Ray.

**Defendants Sowell, Ayala, and Noegel.** Plaintiff further asserts that Defendants Sowell, Ayala, and Noegel violated her rights under the Fourteenth Amendment but offers no facts to support those claims.

**Defendants Gonzales and Chapa.** Plaintiff alleges that Defendants Gonzales and Chapa violated her Fourteenth Amendment right of equal protection. ECF No. 15 at 56, 63. Plaintiff alleges that Gonzales and Chapa forced Plaintiff to "pay unauthorized fees under the stated threat of lawful consequences [which] demonstrates financial extortion, unlawful seizure, and official oppression." *Id.* at 55, 62. The Equal Protection Clause of the Fourteenth Amendment requires that similarly situated persons be treated alike. *Cleburne Living Ctr.*, 473 U.S. at 439. Plaintiff has failed to provide any facts to support her claims that any fees assessed by Defendants Gonzales or Chapa were unauthorized or otherwise discriminatorily applied.

Accordingly, Plaintiff has failed to state a claim against any of the Defendants for violations of her Fourteenth Amendment rights.

### III.    State-law claims against the local officials are barred by the TTCA

Plaintiff's claims against local officials in their individual capacities would fail under Section 101.106(f) of the Texas Tort Claims Act ("TTCA") because the officers' allegedly tortious conduct plainly occurred while they were acting in the scope of their employment.

Section 101.106(f) of the TTCA, entitled "Election of Remedies," provides:

> If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under [the TTCA] against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only. On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after . . . the motion is filed.

TEX. CIV. PRAC. & REM. CODE § 101.106(f).

As defined in section 101.106(f), a governmental employee is effectively sued in an official capacity when the suit (1) is "based on conduct within the general scope of that employee's employment" and (2) "could have been brought under [the TTCA] against the governmental unit." *Id.* at 394. Even when the plaintiff purports to bring the claims against the employee in their individual capacity, the claims will be deemed official capacity claims subject to section 101.106(f) if these conditions are met. By adopting section 101.106(f), the Legislature has effectively mandated that only a governmental unit can be sued for a governmental employee's work-related tortious conduct. *Garza v. Harrison*, 574 S.W.3d 389, 393–94 (Tex. 2019).

"For purposes of section 101.106(f), the employee's state of mind, motives, and competency are irrelevant so long as the conduct itself was pursuant to the employee's job responsibilities." *Garza*, 574 S.W.3d at 401. Even intentional torts can be within the scope of

employment.[6] All common-law tort theories alleged against a governmental unit are assumed to be "under the Tort Claims Act" and thus could have been brought against the governmental unit, even if the governmental unit's immunity is not waived by the Act.[7]

Plaintiff asserts claims of negligence against Defendants Sowell and King. ECF No. 15 at 45, 86. Even construing these claims as claims against Comal County, Plaintiff offers no facts to support them. Moreover, Section 101.021 of the Texas Civil Practices and Remedies Code and provides that "[a] governmental unit in the state is liable for . . . personal injury and death so caused by a condition or use of tangible or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." TEX. CIV. P. & REM. § 101.021. Plaintiff provides no facts showing that Plaintiff was injured by Defendants Ayala or Noegel through the *tangible use of personal property.*

## CONCLUSION

For the foregoing reasons, Plaintiff's amended complaint (ECF No. 15) fails to state any claim on which relief can be granted.

From what the Court can ascertain from Plaintiff's separate lawsuit (5:24-cv-774) filed in July of 2024, the Comal County Sheriff's Office (CCSO) received a call from Plaintiff. Plaintiff informed the CCSO that her boyfriend was deceased in her home and had died the previous day.

---

[6] *See Hundall v. Univ. of Tex. at El Paso*, No. EP-13-00365-DCG, 2014 WL 12496895, at *12 (W.D. Tex. Feb. 21, 2014) ("Plaintiff's claims for invasion of privacy, defamation, libel, slander, civil conspiracy, fraud, harassment, victimization, negligence, gross negligence, assault, malice, and medical malpractice all arise from communications and interactions with the individual defendants at UTEP. Since Plaintiff consistently and repeatedly asserts throughout the complaint that the individual defendants were acting as "agent[s] of UTEP," the Court finds no reason to conclude to the contrary and thus finds that the first prong is satisfied."); *Valentine v. City of Austin*, No. A-15-CV-482, 2015 WL 12942440, at *5 (W.D. Tex. Nov. 10, 2015) ("Thus, any fraud or other intentional tort claims Valentine would seek to bring against the individual police officers defendants would be foreclosed by §101.106(f)."), *report and recommendation adopted in relevant part by* 2016 WL 7756808, at *2 (W.D. Tex. Jan. 20, 2016).

[7] *See also Franka v. Velasquez*, 332 S.W.3d 367, 381 (Tex. 2011) ("This construction of section 101.106(f) does, however, foreclose suit against a government employee in his individual capacity if he was acting within the scope of employment."); *Wilkerson v. Univ. of N. Tex.*, 878 F.3d 147, 158 (5th Cir. 2017) ("Though Wilkerson alleges she acted in her personal capacity, Glazebrook gets governmental immunity.").

CCSO Deputies and Texas Rangers went to the residence and found a deceased male lying on the bathroom floor with a gunshot wound. At some point a warrant was issued for the Plaintiff charging her with tampering with evidence. Plaintiff was booked on August 4, 2022, and released from the jail the following day after posting a $50,000 bond. Upon review, the Court finds the SAC vague and ambiguous. Even under a broad reading, the Plaintiff has failed to assert any potential Section 1983 claim against the defendants. While the complaint clearly asserts federal jurisdiction under 42 U.S.C. § 1983, the Plaintiff's alleged facts are too vague and ambiguous as to how the statute provides jurisdiction or even what claims she asserts in this case. A more definite statement, pursuant to FED. R. CIV. P. 12(e) is appropriate.

Accordingly, the Court grants Plaintiff leave to file a Third Amended Complaint, of **no more than 10 pages**, that cures the defects identified described in this order by no later than **June 20, 2025.** The amended complaint shall (1) show that federal jurisdiction exists in this case, (2) include a short and plain statement of each claim showing that she is entitled to relief, and (3) state a demand for relief sought. Merely identifying federal statutes or amendments is insufficient without underlying facts showing their applicability. In accordance with FED. R. CIV. P. 10(b), Plaintiff's amended complaint shall state her claims "in numbered paragraphs each limited as far as practicable to a single set of circumstances." The amended pleading should clearly state the disposition of any former criminal proceedings (and status of any ongoing criminal proceedings) against Plaintiff that are the subject of Plaintiff's allegations here.

The Court **DENIES** Plaintiff's Motion to Correct and Notice to the Court Regarding Incorrect Docket Text Entry (ECF No. 16). If the Plaintiff files a Third Amended Complaint that

cures the defects identified and described in this order, the case caption will be amended accordingly.[8]

The Court **DENIES** Plaintiff's Motion for Chief Judge Review, and Motion for Recusal (ECF No. 20). Under 28 U.S.C. § 455(a), recusal is not warranted. A reasonable and objective person would not harbor doubts concerning the judge's impartiality in this case. *See United States v. Rhodes*, 332 F. Supp. 2d 965, 967 (N.D. Tex. 2004) ("A court should not allow § 455(a) to be used as a vehicle for an attorney to pick and choose the judge who will preside over a case he is handling," and "the statute [does not] require recusal on a mere unsubstantiated suggestion of personal bias or prejudice."

**Failure to respond to this Order will result in dismissal of Plaintiff's claims without further notice.**

It is so **ORDERED**.

**SIGNED** this 5th day of June, 2025.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

---

[8] Although the caption may serve as a guide, courts look to the body of the complaint to determine the parties. *See Blanchard v. Terry & Wright, Inc.,* 331 F.2d 467, 469 (6th Cir.1964) ("It is true that the name of the United States does not appear in the caption of the complaint, but the caption is not regarded as containing any part of plaintiffs' claim. We must look to the allegations of the complaint in order to determine the nature of plaintiffs' cause of action."); *Deaville v. Capital One Bank,* 425 F.Supp.2d 744, 750 (W.D.La.2006) ("[A] defective caption is not a fatal defect."); *Tyrolf v. Veterans Admin.,* 82 F.R.D. 372, 375 (E.D.La.1979) (holding that the United States was properly joined as a party because "the body of the complaint named the United States as a party defendant.").