**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| EVE ESCOBEDO, | § | |
| *Plaintiff* | § | |
| | § | |
| v. | § | Case No.  SA-24-CA-00773-XR |
| | § | |
| MARK REYNOLDS ET AL. | § | |
| *Defendants* | § | |

## ORDER GRANTING RULE 12(c) MOTION

On this date, the Court considered Defendants Comal County, Jennifer Tharp, and Mark Reynolds's Motion for Judgment on the Pleadings (ECF No. 53) and Plaintiff Eve Escobedo's Response (ECF No. 57).  After careful consideration, the Motion is **GRANTED.**  Plaintiff's claims against Comal County, Jennifer Tharp, and Mark Reynolds are **DISMISSED WITH PREJUDICE**, as are her official-capacity claims against Fabian Chapa, Erick Vargas, Rebekah Coons, Joe Gonzales, Gary Noegel, Jennifer Smith, and Roger Millican.

## BACKGROUND

The facts described herein are derived from the Fourth Amended Complaint and are taken as true for purposes of adjudicating this Motion.  *See, e.g.*, *Chauvin v. State Farm Fire & Cas. Co.*, 495 F.3d 232, 237 (5th Cir. 2007); *Guerra v. Castillo*, 82 F.4th 278, 284 (5th Cir. 2023).

### I.    The Search of Plaintiff's Home

On August 3, 2022, Plaintiff Eve Escobedo called 911.  ECF No. 61 at 3.  The Operative Complaint does not indicate why.  When deputies from Comal County Sheriff's Office, including Defendant Erick Vargas, arrived they unsuccessfully tried to taze Escobedo's dog.  *Id.*  Shortly thereafter, respondents from Bulverde Spring Branch Emergency Services ("Bulverde Spring

1

EMS") arrived. *Id.* Escobedo complains that no one provided her with aid or a medical assessment. *Id.* She does not explain why such aid or assessment was necessary.

Escobedo permitted officials to enter her home, but "solely to render emergency aid to her." *Id.* Shortly thereafter, Vargas directed her outside and told her the house was a crime scene. *Id.* Another officer surrounded it with crime scene tape. *Id.* The Operative Complaint does not explain why the house was designated a crime scene.

Escobedo then notified Vargas that she "revoked consent to enter" the residence, and she demanded a warrant. *Id.* Nonetheless, Bulverde Spring EMS responders remained in the house and, in fact, "entered deeper into the residence." *Id.*

Two Texas Rangers, including Defendant Joshua Ray, arrived, and Ray questioned Plaintiff. ECF No. 61 at 3. Escobedo talked with him to some extent but eventually "declined further questioning." *Id.* Even so, he "continued to engage" her. ECF No. 61 at 4.

Throughout all of this, Vargas, Ray, Defendant Rebekah Coons, and others entered Escobedo's residence. *Id.* They did not allow her to retrieve medication, her wallet, or other personal items. *Id.* Escobedo was not allowed into the home for over twenty hours. *Id.* Meanwhile, she had to "leave the property, seek shelter elsewhere, borrow money[,] and ask for transportation resulting in humiliation and hardship." *Id.*

No one provided Escobedo a search warrant related to this incident until weeks later, and she alleges that the affidavit accompanying the warrant "omitted material facts." *Id.*

## II.    Plaintiff's Arrest, Detention, and Criminal Case

On August 4, 2022, Ray and an unidentified Comal County officer arrested Escobedo for tampering with evidence. *Id.* Ray also "threatened a 'murder' charge." *Id.* The Operative

Complaint does not describe the allegations underlying the arrest or the circumstances the officers relied on to justify the arrest.

Escobedo was initially detained to await trial, and she allegedly experienced "extreme cold and deprivation of basic necessities" in jail.  ECF No. 61 at 5.  On August 5, an unidentified jailer escorted her to a meeting with Gina Jones Motz, who is an attorney and bail bond agent.  *Id.*  Motz "solicited [Escobedo] for paid legal representation and bail services," and Escobedo ultimately retained her as an attorney.  *Id.*

Shortly later, Escobedo was released on a $50,000 bond.  *Id.*  Her pretrial officers— Defendants Joe Gonzales and Fabian Chapa—required her to pay monthly fees even though doing so was not one of the conditions of her release.  *Id.*  Escobedo has since formally requested a refund for those fees, which was granted in full.  *Id.*

In November 2023, Escobedo's criminal case was dismissed without prejudice.  ECF No. 61 at 1, 5.  She complains that her criminal case "remained without a public docket until its dismissal."  ECF No. 61 at 6 (emphasis omitted).

### III.    Public Disclosure of Information About Plaintiff's Case

Escobedo alleges that certain Defendants shared information about her and her criminal charges with the media.  At an unspecified time, Defendant Jennifer Smith allegedly shared sealed information about Escobedo's criminal case with media outlets.  ECF No. 61 at 5.  Escobedo does not explain what this information was.  Defendant Roger Millican—a Comal County Investigator—was quoted in an article "linking [Escobedo] to tampering, inconsistent statements, and a pending autopsy."  *Id.*  Some media outlets have taken down their articles about Escobedo, while others have not.  *Id.*

### IV.    Plaintiff's Complaints and Inquiries

Since her criminal case's dismissal, Escobedo has sent several complaints to County and State officials.  In March 2024, she sent a complaint to Patrice King, who was Secretary of the Comal County Bail Bond Board at the time.  ECF No. 61 at 6.  The Operative Complaint provides little detail about what this complaint said, but it seems to have been about Escobedo's meeting with Motz while she was detained.  *See id.*

King emailed the complaint to some investigators and copied Defendant Mark Reynolds, who was the Comal County Sheriff and Chair of the Bail Bond Board at the time.  *Id.*  King told the investigators to report to Reynolds.  *Id.*

In April 2024, Reynolds emailed Escobedo that an internal review had found no violation.  *Id.*  The same month, Reynolds signed an order in his capacity as Chair of the Bail Bond Board dismissing Escobedo's complaint for "lack of reasonable cause."  *Id.*  In June 2024, Escobedo reached out to a Captain in the Sheriff's Office—Defendant Gary Noegel—and another official who is not a party here, requesting records from the internal investigation of her complaint.  ECF No. 61 at 7.  She received no response.  *Id.*

The Comal County District Attorney's Office also received the complaint that was originally sent to King, though it is unclear how or why.  ECF No. 61 at 6.  The DA's Office construed the complaint as a request for information under the Texas Public Information Act (the "PIA").  *Id.*  It therefore filed objections with the Texas Attorney General's Office seeking to withhold certain records.  *Id.*  Escobedo alleges that the Comal County District Attorney— Defendant Jennifer Tharp—did all of this herself.  *See* ECF No. 61 at 6–7.

Escobedo also sent an "open letter" to the DA's Office requesting that her case be dismissed with prejudice.  ECF No. 61 at 6.  She received no response to that letter.  *Id.*

Finally, Escobedo submitted a complaint to the Texas Office of the Inspector General ("OIG"). *Id.* The OIG did not investigate the complaint, claiming it had no jurisdiction over Comal County. *Id.*

## V. Procedural Background

Escobedo brings claims against several defendants. Relevant here, she sues: (1) Mark Reynolds in his individual capacity and in his official capacities as Comal County Sheriff and Chair of the Bail Bond Board; (2) Jennifer Tharp in her individual capacity and in her official capacities as Comal County District Attorney and a member of the Bail Bond Board; (3) Comal County itself; and (4) the following Comal County officials in both their individual and official capacities: Erick Vargas (a Sheriff's deputy), Rebekah Coons (an investigator with the Sheriff's Office), Jennifer Smith (Comal County Public Information Officer), Rocky Millican (a Comal County investigator), Joe Gonzales (a Comal County pretrial officer), Fabian Chapa (same), and Gary Noegel (a captain in the Sheriff's Office). *See* ECF No. 61. Escobedo also includes ten "Doe" defendants, though she does not specify if her claims against them are in their individual or official capacities. *See* ECF No. 61 at 4.

Escobedo's claims are under 42 U.S.C. Section 1983 for purported violations of the First, Fourth, and Fourteenth Amendments of the United States Constitution.

Defendants Comal County, Reynolds, and Tharp moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). ECF No. 53. After they filed the Motion, the Court granted Escobedo leave to file a Fourth Amended Complaint, which she did. ECF No. 61. The Motion for Judgment on the Pleadings is ripe for review. *See* ECF Nos. 53, 57.

## DISCUSSION[1]

### I.      Application of the Motion to the Fourth Amended Complaint

Escobedo first argues that the Motion should be denied as moot or premature, because the Fourth Amended Complaint was filed after the Motion. Defendants are not "required to file a new motion to dismiss simply because an amended pleading was introduced while their motion was pending." *Davis v. Baylor Reg'l Med. Ctr. at Grapevine*, No. 3:11-CV-1350-L, 2013 WL 866173, at *1 (N.D. Tex. Mar. 8, 2013) (quoting C.A. Wright, A.R. Miller & M.K. Kane, 6 Fed. Prac. & Proc. Civ. § 1476 (3d ed. 2010)). Because "the defects raised in the original motion remain in the new pleading, the court [will] simply consider the motion as being addressed to the [Fourth Amended Complaint]." *Id.* (quoting same).

### II.      Rule 12(c) Standard

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). "The standard for dismissal under Rule 12(c) is the same as that for dismissal for failure to state a claim under Rule 12(b)(6)." *Chauvin v. State Farm Fire & Cas. Co.*, 495 F.3d 232, 237 (5th Cir. 2007) (citing *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004)).

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662,

---

[1] Escobedo is proceeding *pro se* in this case. When reviewing a *pro se* plaintiff's complaint, the Court must construe the allegations liberally, holding the *pro se* to less stringent pleading standards than those applicable to lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). But a party's *pro se* status does not offer them an "impenetrable shield, for one acting *pro se* has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets." *Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 359 (5th Cir. 1986).

678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  A claim for relief must contain: (1) "a short and plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain statement of the claim showing that the pleader is entitled to relief"; and (3) "a demand for the relief sought." FED. R. CIV. P. 8(a).  A plaintiff "must provide enough factual allegations to draw the reasonable inference that the elements exist." *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 995 F. Supp. 2d 587, 602 (N.D. Tex. 2014) (citing *Patrick v. Wal–Mart, Inc.-Store No. 155,* 681 F.3d 614, 617 (5th Cir. 2012)); *see also Torch Liquidating Trust ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 384 (5th Cir. 2009) ("[T]he complaint must contain either direct allegations or permit properly drawn inferences to support every material point necessary to sustain a recovery.") (internal quotation marks and citations omitted).

In considering a Rule 12(b)(6) motion, all factual allegations from the complaint should be taken as true and construed in the light most favorable to the nonmoving party. *Fernandez-Montes v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993).  Still, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  "'[N]aked assertions' devoid of 'further factual enhancement,'" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *see also R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (stating that the Court should neither "strain to find inferences favorable to the plaintiffs" nor accept "conclusory allegations, unwarranted deductions, or legal conclusions").

### III.    Analysis

Defendants Comal County, Reynolds, and Tharp argue that Escobedo has failed to state a claim against them primarily because she has not shown any policy or practice that can support municipal liability claim under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), and has not alleged that Reynolds or Tharp participated in any unconstitutional conduct. ECF No. 53. The Court will address each of these Defendants in turn.

### a.    Claims Against Comal County

The Motion first seeks dismissal of Escobedo's claims against Comal County. As mentioned above, in addition to suing the County, Escobedo brings official-capacity claims against several county officials: Reynolds, Tharp, Chapa, Vargas, Coons, Gonzales, Noegel, Smith, and Millican. ECF No. 61. "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Escobedo's official-capacity claims against the defendants just listed are thus, "in all respects other than name," against the County. *Id.*; *Pena v. Cardona*, No. SA-24-CA-00481-XR, 2026 WL 194942, at *3 (W.D. Tex. Jan. 22, 2026). So the Court construes the Motion's request for dismissal of the claims against the County to also request dismissal of the official-capacity claims against Reynolds, Tharp, Chapa, Vargas, Coons, Gonzales, Noegel, Smith, and Millican.[2]

"[M]unicipalities can be sued directly under [Section] 1983," but they "cannot be found liable on a theory of vicarious liability or respondeat superior." *Webb v. Town of Saint Joseph*,

---

[2] It appears that Defendants Comal County Emergency Services Districts No. 1, 4, and 5 may be distinct municipal entities from Comal County itself, and they are represented by different attorneys. So this Order does not concern Escobedo's claims against the Emergency Services Districts or against Defendant Mark Southwell, who Escobedo sues in his official capacity as Fire Chief of the Emergency Services Districts.

925 F.3d 209, 214 (5th Cir. 2019) (quoting *Davidson v. City of Stafford, Tex.*, 848 F.3d 384, 395 (5th Cir. 2017), *as revised* (Mar. 31, 2017)).  Rather, "the unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger [municipal] liability." *Id.* (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)).  As such, "municipal liability under [S]ection 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom."  *Piotrowski*, 237 F.3d at 578 (citing *Monell*, 436 U.S. at 694); *Alvarez v. City of Brownsville*, 904 F.3d 382, 389 (5th Cir. 2018).

### 1. *Municipal Policy*

There are "three ways of establishing a municipal policy for the purposes of *Monell* liability."  *Webb*, 925 F.3d at 214–15.  "First, a plaintiff can show 'written policy statements, ordinances, or regulations.'"  *Id.* at 215 (quoting *Alvarez*, 904 F.3d at 389–90).  Second, a plaintiff can show a "de facto" policy—that is, "'a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy.'"  *Id.*; *Culbertson v. Lykos*, 790 F.3d 608, 628–29 (5th Cir. 2015).  Third, "a single decision may constitute municipal policy in 'rare circumstances' when the official or entity possessing 'final policymaking authority' for an action 'performs the specific act that forms the basis of the [Section] 1983 claim.'"  *Webb*, 925 F.3d at 215 (quoting *Davidson*, 848 F.3d at 395).

Escobedo does not allege any "written policy statement[], ordinance[], or regulation[]." *Webb*, 925 F.3d at 215.

She also does not adequately allege a de facto policy.  *Monell* liability for an unofficial policy or custom requires a practice "so persistent and widespread as to practically have the force

of law." *Verastique v. City of Dallas, Tex.*, 106 F.4th 427, 432 (5th Cir. 2024), *cert. denied*, 145 S. Ct. 772 (2024). "[D]escrib[ing] the incident that gave rise to [the plaintiff's] injury" is not enough. *Pena*, 2026 WL 194942, at *4 (quoting *Ratliff v. Aransas Cnty., Tex.*, 948 F.3d 281, 285 (5th Cir. 2020)); *Culbertson*, 790 F.3d at 629 ("The allegations in this case are limited to the events surrounding the plaintiffs. That is not an allegation of a *de facto* policy."). Escobedo's allegations are limited to the incidents that allegedly gave rise to her injury. So she has not adequately alleged a de facto policy that can support municipal liability.

Finally, Plaintiff has not adequately alleged that this is one of those "rare circumstances" when a "single decision" by a "final policymaking authority" can "form the basis of [a] [Section] 1983 claim" against a municipality. *Webb*, 925 F.3d at 215. This "'single decision' exception is 'extremely narrow' and only applies in 'rare circumstances.'" *Liggins v. Duncanville, Tex.*, 52 F.4th 953, 955 (5th Cir. 2022) (quoting *Valle v. City of Houston*, 613 F.3d 536, 542 (5th Cir. 2010)). The municipal actor in question must be a "final policymaker" *Valle*, 613 F.3d at 542, and "the constitutional harm in question must've been the 'plainly obvious consequence of the actor's single decision.'" *Liggins*, 52 F.4th at 955. The only defendants who Escobedo argues are final policymakers are Reynolds and Tharp. ECF No. 57. But, for the reasons stated in dismissing the claims against those defendants below, Escobedo has not alleged any decisions by them that led to a constitutional harm.

Escobedo has not adequately alleged a municipal policy that could support liability under *Monell*.

### 2. Ratification

Escobedo also alleges that "Municipal Defendants ratified, approved, or failed to correct" allegedly problematic conduct. ECF No. 61 at 10. A municipality can be liable under

10

Section 1983 on a ratification theory if a final policymaker "approve[s] a subordinate's decision and the basis for it." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). But "ratification requires the *approval* of a policy maker, not their mere acquiescence." *Benfer v. City of Baytown, Tex.*, 120 F.4th 1272, 1287 (5th Cir. 2024) (emphasis added), *cert. denied*, 145 S. Ct. 1313 (2025). Escobedo has not alleged any facts suggesting that a final policymaker "approved of," as opposed to "acquiescing in," any subordinate's relevant conduct. *See Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 848 n.2 (5th Cir. 2009) (Evidence that the relevant subordinates were not disciplined, combined with evidence that the supervisor testified that the subordinates complied with relevant policies and procedures, was not enough to find ratification.).

The closest she gets is alleging that Reynolds dismissed her complaints. But the Fifth Circuit has refused to find ratification in a case where a police chief "determined after investigation that" officers' "conduct complied with the department's policies." *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 848, 848 n.2 (5th Cir. 2009). And "a policymaker who defends conduct that is later shown to be unlawful does not necessarily incur liability on behalf of the municipality." *Id.* at 848.

Further, the Fifth Circuit applies the ratification theory only in "extreme factual situations." *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 848 (5th Cir. 2009) (quoting *Snyder v. Trepagnier,* 142 F.3d 791, 798 (5th Cir. 1998)). "Therefore, unless the subordinate's actions are sufficiently extreme—for instance, an obvious violation of clearly established law—a policymaker's ratification or defense of his subordinate's actions is insufficient to establish an official policy or custom." *World Wide St. Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 755 (5th Cir. 2009).

Escobedo does not allege such "extreme" facts here.  She gives no indication of why her home was designated a crime scene and omits the circumstances allegedly justifying her arrest and prosecution.  Without that kind of information, one could not reasonably infer that this case involves the kind of "extreme" facts necessary for ratification-based Section 1983 liability.  *See Peterson*, 588 F.3d at 848 ("*Compare Grandstaff v. City of Borger,* 767 F.2d 161 (5th Cir. 1985) (finding ratification in case in which officers 'poured' gunfire onto a truck and killed innocent occupant), *with Snyder,* 142 F.3d at 798 (refusing to find ratification in case in which officer shot fleeing suspect in the back)."); *Rodriguez v. City of Houston*, 651 F. App'x 282, 286 (5th Cir. 2016) ("[A] showing of such extreme situations requires more than a showing that the [municipality] failed to adequately punish the offending officer for illegal conduct.").

### 3.  Failure to Train or Supervise

Escobedo also briefly asserts "failure to train" and "failure to supervise" theories.  ECF No. 61 at 10.  To succeed on these claims, Escobedo would have to show "(1) the [municipality] failed to train or supervise the officers involved; (2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of [Escobedo's] rights; and (3) the failure to train or supervise constituted deliberate indifference to [Escobedo's] constitutional rights." *Benfer*, 120 F.4th at 1286–87.

The only allegation relevant to the failure to supervise claim is that "[m]unicipal Defendants failed to . . . supervise" certain personnel "on" certain broad topics.  ECF No. 61 at 10–11.  Such a "threadbare recital[] of [an] element[] of a cause of action" is not entitled to a presumption of truth.  *Iqbal*, 556 U.S. at 678.

The failure to train claim fares no better.  "In order for liability to attach based on an inadequate training claim, a plaintiff must allege with specificity how a particular training program

12

is defective." *Benfer*, 120 F.4th at 1287.  Escobedo alleges that the County "failed to train" "on constitutional limits governing entry, continued presence after revocation of consent, cooperation with media, and handling of unfiled criminal matters." ECF No. 61 at 10–11.  She also seemingly suggests that the County did not provide adequate training on "honoring consent revocation" or "warrantless home occupation absent true exigency." ECF No. 61 at 11.  These broad, conclusory allegations are not enough.

Further, Escobedo has not pleaded facts that could support an inference of deliberate indifference, which is required for both failure to train and failure to supervise claims.  *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011).  "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Id.* at 446–47 (cleaned up).  That is to say, the policy maker must have had "actual or constructive notice that a particular omission" "causes employees to violate citizens' constitutional rights," and must still have chosen "to retain" the "program." *Id.* at 447 (cleaned up).  "A pattern of similar constitutional violations . . . is ordinarily necessary to demonstrate deliberate indifference." *Id.*

Escobedo has not alleged a pattern of similar violations or otherwise pleaded facts suggesting that a final policymaker was on notice of any relevant omission in training or supervision, let alone on notice that such an omission caused constitutional violations.  Her claims against Comal County are **DISMISSED**, as are her official-capacity claims against Reynolds, Tharp, Chapa, Vargas, Coons, Gonzales, Noegel, Smith, and Millican.

> b.  Claims Against Reynolds

The Motion next requests dismissal of Escobedo's claims against Reynolds.  As with municipalities, "[s]upervisory officials cannot be held liable under [S]ection 1983 for the actions of subordinates . . . on any theory of vicarious or *respondeat superior* liability." *Estate of Davis*

*ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005). "A supervisory official may be held liable . . . only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury." *Porter*, 659 F.3d at 446 (alteration in original) (quoting *Gates v. Texas Dep't of Prot. & Reg. Servs.,* 537 F.3d 404, 435 (5th Cir. 2008)).  To the extent Escobedo brings claims against Reynolds for implementing an unconstitutional policy, her claims fail for the same reasons they do against the County—she has not adequately alleged any policy, ratification, or failure to train or supervise.

Escobedo has also failed to state a claim based on Reynolds's "affirmative[] participat[ion] in . . . acts that cause[d] [a] constitutional deprivation."  *Id.*  Escobedo alleges that Reynolds: (1) supervised the people who entered her house; (2) informed Escobedo that an internal review found no violations related to one of her complaints, without providing findings or an opportunity to participate in the internal review; and (3) as Chair of the Bail Bond Board, signed an order dismissing Escobedo's complain for lack of reasonable cause.  ECF No. 61 at 6.

As to Reynolds's alleged supervision of officers who entered Escobedo's home: again, mere supervision is not enough to hold a supervisor liable under Section 1983.  *McCully*, 406 F.3d at 381.  Because Section 1983 does not provide for vicarious liability, *id.*, Reynolds is not liable for simply being in charge of officers who allegedly violated Escobedo's rights.

As to the other allegations, even assuming that there was some flaw in the review of Escobedo's complaint, "[t]here is no federal constitutional right to compel an investigation." *Starrett v. City of Richardson, Tex.*, 766 F. App'x 108, 111 (5th Cir. 2019); *see also City of Hearne, Tex. v. Johnson*, 929 F.3d 298, 301 (5th Cir. 2019) ("It is not enough to create standing to claim that the process for handling [one's] petition was not followed.").  Nor is there a standalone right

14

to have complaints "resolved to [one's] satisfaction." *Cf. Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005) (finding that an incarcerated person had no "federally protected liberty interest in having [his] grievances resolved to his satisfaction"); *Smith v. Arkansas State Highway Emp., Local 1315*, 441 U.S. 463, 465 (1979) ("[T]he First Amendment does not impose any affirmative obligation on the government to listen[] [or] to respond . . . .").

Escobedo has simply alleged that Reynolds said an investigation found no violation and that he signed an order dismissing her complaint. That is not enough, because it does not go beyond Escobedo seeking to compel an investigation and have a complaint resolved to her satisfaction. Escobedo has failed to state a claim against Reynolds.

c. Claims Against Tharp

For similar reasons, Escobedo has not stated a claim against Tharp. Escobedo alleges that Tharp: (1) "oversaw" Escobedo's arrest, ECF No. 61 at 6; (2) failed to respond to Escobedo's "open letter" requesting dismissal of her criminal case with prejudice, *id.*; (3) classified a complaint from Escobedo as a PIA request and filed objections with the Texas Attorney General in an attempt to withhold certain records, *id.*; (4) "publicly disseminated, confirmed, or sustained accusatory, nonpublic/sealed information about" Escobedo, ECF No. 61 at 9; and (5) oversaw Escobedo's criminal matter while also serving on the Bail Bond Board, ECF No. 61 at 7.

As to Tharp allegedly "overseeing" Escobedo's arrest: again, merely supervising other individuals who allegedly violated a constitutional right does not give rise to Section 1983 liability.

Tharp's alleged handling of Escobedo's complaints also does not state a claim. First, as noted above, Escobedo does not have a constitutional right to a response, a right to compel an investigation, or a right to her preferred outcome on her complaints. Second, she does not plead sufficient facts to support an inference that Tharp did anything improper. Escobedo does not allege

15

anything suggesting that it was unreasonable to construe her complaint as a PIA request, and all she alleges about her "open letter" is that it "request[ed] dismissal [of her criminal case] with prejudice." ECF No. 61 at 6. That does not support an inference that Tharp committed any error in how she handled the complaints.

Escobedo's allegation that Tharp publicly disseminated information is conclusory so is not entitled to a presumption of truth. *R2 Investments LDC*, 401 F.3d at 642 (noting that courts will "not accept 'conclusory allegations'" when considering a motion to dismiss).

That leaves Tharp's alleged "overseeing" of Escobedo's criminal matter while also serving on the Bail Bond Board. ECF No. 61 at 7. In an earlier complaint, Escobedo alleged that Tharp having these dual roles "deprived [her] of an impartial forum, in violation of her rights to petition and due process." ECF No. 25 at 6. The Court thus construes Escobedo to claim that Tharp had a conflict of interest because of her dual roles as District Attorney and Bail Bond Board member.

It is unclear how any such conflict would implicate the right to petition, since—again—Escobedo had no right for the government to investigate or respond to her complaints. *Smith*, 441 U.S. at 465.

The due process claim requires a bit more analysis. To state a due process claim, one must "identify a life, liberty, or property interest protected by the [Due Process Clause] and then identify a state action that resulted in a deprivation of that interest." *Blackburn v. City of Marshall*, 42 F.3d 925, 935 (5th Cir. 1995); *DePree v. Saunders*, 588 F.3d 282, 289 (5th Cir. 2009) ("The threshold requirement of any due process claim is the government's deprivation of a plaintiff's liberty or property interest."), *abrogated on other grounds by Sims v. City of Madisonville*, 894 F.3d 632 (5th Cir. 2018). The right to "[a]n impartial decisionmaker is a basic constituent of minimum due process." *Megill v. Bd. of Regents of State of Fla.*, 541 F.2d 1073, 1079 (5th Cir. 1976). But it is

16

not, itself, a "life, liberty, or property interest." *See McCachren v. U.S. Dep't of Agric. Farmers Home Admin.*, 599 F.2d 655, 656–57 (5th Cir. 1979) (finding that the Due Process Clause did not require an "impartial hearing" where the plaintiff lacked a due-process-protected interest); *Haitian Refugee Ctr. v. Smith*, 676 F.2d 1023, 1037 (5th Cir. 1982) ("Procedural due process is not itself an independent right, but merely the condition precedent to the deprivation of a life, liberty, or property interest.").

So Escobedo must allege some separate life, liberty, or property interest that Tharp deprived her of. She identifies two possibilities. First, she says Tharp's conduct caused reputational injury sufficient to implicate due process under a "stigma-plus" theory. "To show a due process violation under this theory, 'a . . . plaintiff [must] show stigma plus an infringement of some other interest.'" *Tex. Laurel Ridge Hosp., LP v. Kennedy*, No. SA-26-CA-02701-JKP, 2026 WL 1194244, at *10 (W.D. Tex. Apr. 28, 2026) (alteration in original) (quoting *Does 1-7 v. Abbott*, 945 F.3d 307, 313 (5th Cir. 2019)). "The Fifth Circuit has 'found sufficient stigma only where a state actor has made concrete, *false* assertions of *wrongdoing on the part of the plaintiff.*'" *Id.* (emphasis in original) (quoting *Does 1-7*, 945 F.3d at 313). "And 'for a charge to be stigmatizing it must be worse than merely adverse; it must be such as would give rise to a badge of infamy, public scorn, or the like.'" *Id.* (quoting *Blackburn*, 42 F.3d at 936).

Escobedo's stigma-plus theory relies on Tharp's alleged public sharing of information about Escobedo. But, as described above, that allegation is conclusory—there is no indication of what information Tharp shared, whom she shared it with, why Escobedo thinks Tharp herself shared the information, or how the information caused stigma. Such a conclusory allegation is not enough to state a stigma-plus claim.

17

Escobedo also alleges that Tharp and others caused "actual litigation injury" by depriving her of certain information relevant to her constitutional claims. ECF No. 61 at 9. But "there is no constitutional right of access to government information." *Martin v. Burgess,* No. 24-20495, 2026 WL 1084252, at *3 n.2 (5th Cir. Apr. 22, 2026) (quoting *Houchins v. KQED, Inc.*, 438 U.S. 1, 14 (1978) (plurality)); *Houchins*, 438 U.S. at 15 (plurality) ("Neither the First Amendment nor the Fourteenth Amendment mandates a right of access to government information or sources of information within the government's control."). "The Constitution . . . is [not] a Freedom of Information Act." *Martin*, 2026 WL 1084252, at *3 n.2 (quoting *Houchins*, 438 U.S. at 14 (plurality)). Tharp's withholding of information thus did not infringe a due-process-protected interest. Escobedo's claims against Tharp must be dismissed.

## IV.     Leave to Amend

"Ordinarily, 'a pro se litigant should be offered an opportunity to amend [their] complaint before it is dismissed.'" *Wiggins v. Louisiana State Univ.-Health Care Servs. Div.*, 710 F. App'x 625, 627 (5th Cir. 2017) (quoting *Brewster v. Dretke*, 587 F.3d 764, 767–68 (5th Cir. 2009)). But "[g]ranting leave to amend . . . is not required if the plaintiff has already pleaded [their] 'best case.'" *Id.* (citing *Brewster*, 587 F.3d at 768).

Escobedo has amended her complaint four times. ECF Nos. 1, 5, 15, 25, 61. Two of the amendments were after the Court had issued an order identifying numerous pleading deficiencies, many of which remain in the Fourth Amended Complaint. *See* ECF No. 21 at 19 ("The First Amendment does not mandate a result once [a] petition[] [is] received."), 20 ("An allegation that Defendants failed to investigate a grievance fails to state a claim."), 21 ("Under [S]ection 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability."). At the initial status conference for this case, the Court informed Escobedo of possible

deficiencies in the Third Amended Complaint and asked if she still wanted to rely on the Fourth Amended Complaint. She indicated that she did. In light of all this, the Court finds that Escobedo has already pleaded her "best case" on the claims at issue here. So those claims are **DISMISSED WITH PREJUDICE.**

### CONCLUSION

For the foregoing reasons, Escobedo's claims against Comal County, Mark Reynolds, and Jennifer Tharp are **DISMISSED WITH PREJUDICE.** Her official-capacity claims against Fabian Chapa, Erick Vargas, Rebekah Coons, Joe Gonzales, Gary Noegel, Jennifer Smith, and Roger Millican are also **DISMISSED WITH PREJUDICE.**

Escobedo's claims against Mark Southwell; Comal County Emergency Services Districts No. 1, 4, and 5; and Joshua Ray remain pending. Her individual-capacity claims against Fabian Chapa, Erick Vargas, Rebekah Coons, Joe Gonzales, Gary Noegel, Jennifer Smith, and Roger Millican also remain pending.

It is so **ORDERED**.

**SIGNED** this 4th day of May, 2026.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE